UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRETT FOLEY                                                                                           Plaintiff

v.                                                              Civil Action No. 3:17-cv-00403-RGJ-RSE

MEAGAN RAMPLEY                                                                                  Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Officer Meagan Rampley's Motion for Summary Judgment (the "Motion"). [DE 37]. Briefing is complete, and the Motion is ripe. For the reasons below, the summary judgment is **GRANTED**.

I.    BACKGROUND

On the evening of June 17, 2016, Catherine Hundley and Melissa Webb were at Ms. Hundley's house when Ms. Webb invited her boyfriend, Brett Foley, over. [DE 37-3 at 110; DE 37-4 at 3:21; DE 43-1 at 116]. All three were drinking, but Mr. Foley "passed out" and began vomiting. [DE 37-3 at 110; DE 43-1 at 115]. He became "unresponsive," and Ms. Hundley called 911. *Id.* at 37-3 at 110.

When Officer Meagan Rampley arrived, other officers and emergency medical personnel were on scene, and Mr. Foley was laying on a sofa in the living room. [DE 37-4 at 00:43]. Mr. Foley was 6 foot, 7 inches tall and 310 pounds. [DE 37-3 at 110]. Emergency medical personnel informed Officer Rampley that Mr. Foley was being "uncooperative." [DE 37-3 at 110].

Officer Rampley went outside to speak with Ms. Hundley. [DE 37-4 at 02:25]. Officer Rampley asked her if she would like Mr. Foley to leave, and Ms. Hundley said, "Oh God, he's puked all over." *Id.* at 3:33.

1

Officer Rampley returned inside and asked Ms. Webb for Mr. Foley's name. Ms. Webb walked away and did not respond to her initial request. *Id.* at 3:45. Officer Rampley then raised her voice and asked her twice more. *Id.* at 3:52- 4:15. The situation escalated with yelling and argument. Officer Rampley then grabbed Ms. Webb's arm, put it behind her back, handcuffed her, and sat her in a chair. *Id.* at 4:18-4:50. Ms. Webb then provided Mr. Foley's name to Officer Rampley. *Id.* at 5:25.

One of the officers then asked Mr. Foley if he would like to stand up, and Mr. Foley said "no." An officer asked Mr. Foley if he wanted him to "come over and help him stand up," and Mr. Foley said, "I don't want to." *Id.* at 5:29. At this point, officers pulled Mr. Foley from the couch into a standing position, handcuffed his hands behind his back, and arrested him for criminal trespassing. [DE 37-3 at 110; *Id.* at 5:50]. They handcuffed him using two handcuffs: one handcuff on his left wrist, one on his right, connected together across his lower back. *Id.* at 7:26.

Officer Rampley and another officer put Mr. Foley in the backseat of her car. *Id.* at 9:13. While sitting down in the vehicle, Mr. Foley fell onto his back and slid his handcuffed wrists under him. *Id.* at 9:30. His hands were then tucked under his knees. *Id*. The Officers were physically unable to move him to an upright position and Mr. Foley appeared unable to follow the officers' directions to assist. *Id*. at 10:00. Officer Rampley commented to the assisting officer, "You know what, why don't he just ride down there like that?" *Id.* at 10:05.

Officer Rampley walked to Ms. Webb, who was outside, escorted by two officers, and still handcuffed. *Id.* at 11:10. Officer Rampley told her, "You listening to me is your key out of these handcuffs. When an officer asks you nicely what someone's name is or whatever they have. Answer them . . . The main reason that you're not going to jail right now is because I got bigger

crap to deal with on this beat out here and I don't have time to bring another officer off the streets . . ." *Id.* at 11:24-12:08.

Officer Rampley took the handcuffs off Ms. Webb's wrists and asked her to leave. Ms. Webb offered to call Mr. Foley's sister. *Id.* at 12:45. Officer Rampley declined her offer and said: "He pulled two officers off of a critical situation, ok, because he can't act like an adult . . . When you get dumb and drunk and you pull officers off a critical situation, you go to jail, ok. We've got bigger fish to fry. We've got lives to save. And he's over here fucking it up." *Id.* 13:15-13:46.

Before getting in her vehicle, Officer Rampley told another officer, "He's going to jail like this, unbuckled, so I'll drive safely." *Id.* at 15:30. On the way to jail, Mr. Foley said "Hello," asked where he was going, and why the officer arrested him. Mr. Foley also made several unintelligible utterances. *Id.* at 17:40, 17:55, 18:45, 19:35, 19:56, 29:35. Officer Rampley turned her body-camera off a few minutes after they arrived at the jail.

Moments later, Officer Rampley turned her body-camera back on. Mr. Foley was still in her car. Officer Rampley said, "You have to make your way out of here. Good luck with that." [DE 37-5 at 00:11]. Mr. Foley's hands were handcuffed behind his legs and he struggled to stand. *Id.* at 00:23. Officer Rampley said, "You might have to bend over a little to get those arms behind you. I'm sure it hurts." *Id.* at 00:25. When Mr. Foley stood up, Officer Rampley walked him to a metal stool and told him to sit. *Id.* at 1:00. Officer Rampley handcuffed him to the stool. *Id.* at 1:10. Officer Rampley then turned her body-camera off.

When she turned her body-camera on again, Mr. Foley was on the ground, still handcuffed to the metal stool. [DE 37-6 at 00:15]. Officer Rampley ordered Mr. Foley to "roll over and stand up." *Id.* at 00:35. Mr. Foley was unable to stand. *Id.* at 1:00. Officer Rampley told him to "back

3

up to the fence and then use it as help." *Id.* at 1:05. Mr. Foley stood up. *Id.* at 1:24. Officer Rampley removed the handcuffs; his wrists were red. *Id.* at 2:05.

Mr. Foley sued Officer Rampley and the Louisville-Jefferson County Metropolitan Government[1] under 42 U.S.C. § 1983, alleging that Officer Rampley "placed [him] in handcuffs using unnecessary, unreasonable, and excessive force in tightening the handcuffs."[2] [DE 1-3 at 11, ¶ 9]. Defendant now moves for summary judgment. [DE 37].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by

---

[1] This Court has since granted Louisville-Jefferson Metropolitan Government's motion to dismiss. [DE 9].
[2] The Complaint describes itself as "an action for excessive force under Kentucky common law, and for violations of Plaintiff's rights under the state and federal constitutions." [DE 1-3 at 9]. The single cause of action listed in the Complaint, however, lists only 42 U.S.C. § 1983 as a source of law, and neither party has mentioned either Kentucky common law or the Kentucky constitution in any briefing.

"citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

The existence of videotape capturing the events provides "an added wrinkle" to the summary judgment standard. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Courts should "view the events as they unfolded in the light most favorable to [the non-moving party], but never in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording." *Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007).

### III. DISCUSSION

#### A. Excessive Force Claim under 42 U.S.C § 1983

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). To state a claim under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013).

"If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). "But officers sued under the aegis of § 1983 are protected from liability by the doctrine of qualified immunity." *Id*. "Qualified immunity shields the officers from suit if (1) they did not violate any of [plaintiff's] constitutional

5

rights or (2) the violated rights, if any, were not clearly established when they acted." *McGrew*, 2019 WL 4180465 at *1 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted).

The Fourth Amendment of the United States Constitution protects against "excessively forceful or unduly tight handcuffing," *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016), and this right is "clearly established." *See Baynes v. Cleland*, 799 F.3d 600, 616 (6th Cir. 2015). To succeed on an "excessively forceful or unduly tight handcuffing" claim, a plaintiff must prove three elements: 1) he complained that the handcuffs were tight; 2) the officer ignored his complaint; 3) and the handcuffs caused a physical injury. *See McGrew v. Duncan*, No. 18-2022, 2019 WL 4180465, at *2 (6th Cir. Sept. 4, 2019) (citing *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009). The Sixth Circuit has suggested that, even if the plaintiff does not complain about the handcuffs, the first element of a handcuffing claim may still be satisfied if there was an "obvious physical problem" caused by the handcuffs, so that the officer was on notice that the handcuffs were too tight. *O'Malley v. City of Flint*, 652 F.3d 662, 672 (6th Cir. 2011) (In "the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred") (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (internal quotation marks omitted); *see also Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 514 (6th Cir. 2006) (suggesting that swollen and puffy wrists might constitute an obvious physical problem, but not making that finding because swelling and puffiness was not noticed until *after* plaintiff was out of handcuffs and in jail); *see also Buster v. City of Cleveland*, No. 1:09 CV 1953, 2011 WL 1578578, at *4 (N.D. Ohio Apr. 26, 2011) (suggesting blood on back of t-shirt caused by bleeding wrists

6

may constitute an obvious physical problem, but not making that finding because arresting officer did not have opportunity to see it).

Officer Rampley argues that she is entitled to qualified immunity because she did not violate any of Mr. Foley's constitutional rights. [DE 37-1 at 93]. While Officer Rampley does not contest that the handcuffing caused an injury to Mr. Foley, she asserts that he never complained that the handcuffs were too tight. *Id.* As Officer Rampley has admitted that Mr. Foley has proven the third element of the test set forth in *McGrew*, whether Officer Rampley is entitled to qualified immunity turns on the first and second elements. Specifically, whether Mr. Foley has proven that she violated his constitutional rights by not loosening the handcuffs after he complained about them. Based on the record, a jury could not reasonably find for Mr. Foley, and Officer Rampley is entitled to qualified immunity and summary judgment because Mr. Foley has not proven the first and second elements required to maintain his claim.

**B. Mr. Foley has not proven that he complained about the tightness of the handcuffs.**

In his half-page, two sentence Response, Mr. Foley relies on his Affidavit to create a genuine issue of material fact. [DE 43-1]. He does not cite his Complaint or his deposition testimony, and only once refers to the body-camera footage. That said, for summary judgment, the Court will consider the Affidavit, the Complaint [DE 1], his deposition testimony, and the body-camera footage [DE 37-4; DE 37-5; DE 37-6]. *See* Fed. R. Civ. P. 56(c)(3). Based on that record and in the light most favorable to him, Mr. Foley has not proven that he complained about the handcuffs.

*1. The Affidavit*

Mr. Foley's Affidavit consists of twenty-one paragraphs. Paragraphs one through six provide background information and do not create a genuine issue of material fact or mention any complaint about the handcuffs or any "obvious physical problem."

Mr. Foley asserts in paragraph seven that "he became intoxicated to the point that he lost consciousness" and in paragraph eighteen that "[d]uring the entire time" he was in "Officer Rampley's custody, he was in state of semi-consciousness." [DE 43-1 at 115-116]. Thus, Mr. Foley who was semi-conscious and intoxicated, is a marginally competent witness whose "personal knowledge" of that night is questionable. Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . used to . . . oppose a motion must be on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated"). At best, paragraphs eight through eighteen, describe events while he was "semi-consciousness," and thus cannot be based on his personal knowledge, or are unsupported conclusory allegations. *See* Fed. R. Civ. P. 56(c)(4); *Williams v. Ford Motor* Co., 187 F.3d 533, 544 (6th Cir. 1999) ("Plaintiffs cannot challenge the motion for summary judgment by relying on allegations contained in their complaint or on affidavits that merely state conclusory allegations."). Importantly, however, none of these paragraphs asserts that Mr. Foley made a complaint to Officer Rampley about the tightness of his handcuffs or any specific complaints of discomfort.

Additionally, as noted above, the Sixth Circuit has suggested that an "obvious physical problem" with the handcuffs can satisfy the requirement that the plaintiff complain about the

tightness of the handcuffs. *O'Malley*, 652 F.3d at 672. Mr. Foley does not assert in his affidavit that there was any "obvious physical problem."[3]

Mr. Foley's final assertion in his Affidavit is that he "believes the manner in which the handcuffs were placed upon him and the position Officer Rampley transported him, laying on his back, should have made it apparent that injury to his wrist would be a result of Officer Rampley's treatment." [DE 43-1 at 116]. Mr. Foley cites no case law in support of this argument and does not argue that there was an "obvious physical problem" with the handcuffs. This "conclusory assertion" based on his "belief" does not prove that there was an "obvious physical problem" with the handcuffs. *See Payne v. Louisville Metro Dep't of Corr.*, No. 3:14-CV-P600-DJH, 2016 WL 4942025, at *3 (W.D. Ky. Sept. 15, 2016) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment") (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008)).

   *2. Mr. Foley's Complaint and Deposition Testimony*

Mr. Foley's Complaint and deposition testimony are likewise unavailing. In his Complaint, Mr. Foley alleges that he "complained to Defendant Rampley about the tightness of the handcuffs and the pain he was in as a result of the unreasonably tight handcuffs." [DE 1-3 at 11, ¶ 10]. But when Mr. Foley was asked in his deposition if he told Officer Rampley "that the handcuffs were too tight," he responded, "I don't remember if I said that or not." [DE 37-2 at 98]. The contradicted

---

[3] The issue of "obvious physical problem" appears to have been waived.[3] *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997); *see Singleton v. Astrue*, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010) ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs.") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (Table) (6th Cir.1994) (internal quotation marks and formatting omitted).

allegation in the Complaint thus cannot establish a genuine dispute about whether Mr. Foley complained to Officer Rampley about the handcuffs. *See Liberty Lobby*, 477 U.S. at 259 ("A plaintiff may not, in defending against a motion for summary judgment, rest on mere allegations or denials of his pleadings."); *see also Leary v. Livingston Cty.*, 528 F.3d 434, 444 (6th Cir. 2008) ("When a claimant's [deposition] testimony contradicts the allegations in his complaint, we will credit his later testimony.").

### 3. Body-Camera Footage

The nearly thirty-five minutes of body-camera footage provides an "add[ed] wrinkle," showing us what Officer Rampley heard and saw that night.

Mr. Foley did not complain to Officer Rampley that the handcuffs were too tight. He also did not cry, groan, grunt, or do anything to signal to Officer Rampley that the handcuffs were too tight or were causing him pain. *See Scott*, 550 U.S. at 378 (reversing lower court and finding officer entitled to summary judgment because "videotape quite clearly contradicts the version of the story told by respondent and adopted by the Court of Appeals"). Only when he was getting out of the police vehicle did Mr. Foley wince slightly, which the officer acknowledged as there being pain in maneuvering the handcuffs to get out of the vehicle. [DE 37-5 at 00:24]. As soon as he got out of the vehicle, he appeared not to be in any pain and shortly thereafter the handcuffs were removed for booking. *Id.* at 00:32-00:45.

The officers used two handcuffs to secure Mr. Foley, likely because of his size. Because he was handcuffed using two handcuffs, Officer Rampley would be less likely to think that he was in discomfort or that there was an "obvious physical problem" with the handcuffs. And, although on the body-camera footage Mr. Foley's wrists were red after the handcuffs were removed, the footage did not depict any "obvious physical problem" with his wrists while he was handcuffed.

10

[DE 37-6 at 2:05]; *See Chaudoin*, 199 F. App'x 509, 514 (suggesting that swollen and puffy wrists might constitute an obvious physical problem, but not making that finding because swelling and puffiness was not noticed until *after* plaintiff was out of handcuffs and in jail); *see also Buster*, No. 1:09 CV 1953, 2011 WL 1578578, at *4 (suggesting blood on back of t-shirt caused by bleeding wrists may constitute an obvious physical problem, but not making that finding because arresting officer did not have opportunity to see it).

## IV.  CONCLUSION

For the reasons above, and the Court being otherwise sufficiently advised, **THE COURT ORDERS** that Defendant's Motion for Summary Judgment, [DE 37], is **GRANTED**. This is a **FINAL AND APPEALABLE ORDER**, there being no just cause for delay. The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge
United States District Court

September 19, 2019